IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

IN RE:  Nuvidorra, Inc.              CASE NO. 8:19-bk-05832-CPM
                                                                         CHAPTER 11

  Debtor(s)

### DISCLOSURE STATEMENT

Nuvidorra, Inc. the above-captioned Debtor and Debtor-in-Possession, hereby files and proposes its Disclosure Statement in the form and content set forth herein.

MELODY D. GENSON, ATTORNEY AT LAW
2750 Ringling Blvd., Suite 3
Sarasota, Florida 34237
Telephone: (941) 365-5870
Facsimile: (941) 365-5872
Attorney for Debtor

## TABLE OF CONTENTS

|       |                                                          | Page |
|-------|----------------------------------------------------------|------|
| I.    | INTRODUCTION                                             | 2    |
|       | A. Purpose of Disclosure Statement                       | 2    |
|       | B. Source of Information                                 | 2    |
|       | C. Manner of Voting on the Plan                          | 2    |
|       | D. Hearing on Confirmation of the Plan                   | 3    |
|       | E. Acceptances Required to Confirm the Plan              | 3    |
| II.   | EVENTS LEADING TO FILING OF CHAPTER 11 PETITION          | 3    |
|       | A. Background                                            | 3    |
|       | B. Commencement of Chapter 11 Case                       | 4    |
|       | C. Pending Litigation                                    | 4    |
| III.  | SUMMARY OF PLAN OF REORGANIZATION                        | 4    |
| IV.   | EXECUTORY CONTRACTS                                      | 7    |
| V.    | ANTICIPATED MEANS OF EXECUTION OF PLAN                   | 8    |
|       | A. Funding                                               | 8    |
|       | B. Historical Data and Future Projections                | 9    |
| VI.   | LIQUIDATION ANALYSIS                                     | 9    |
| VII.  | RISK FACTORS                                             | 10   |
| VIII. | CRAMDOWN                                                 | 10   |
| IX.   | MODIFICATION OF PLAN                                     | 10   |
| X.    | FINAL DECREE                                             | 11   |
| XI.   | CONTINGENCIES                                            | 11   |
| XII.  | PROFESSIONAL PERSONS                                     | 11   |
| XIII. | CONCLUSION                                               | 11   |

INCOME AND EXPENSES            REFERENCE EXHIBIT "A"
PRO FORMA BUDGET               REFERENCE EXHIBIT "B"

I. **INTRODUCTION**

    A. <u>Purpose of Disclosure Statement</u>:

Nuvidorra, Inc. the above-captioned debtor and debtor-in-possession (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement") to all of the known creditors and parties in interest in order to disclose that information deemed by the Debtor to be necessary to arrive at a reasonably informed decision in exercising a right to vote for acceptance or rejection of their Plan of Reorganization dated October 9, 2019 (the Plan). This Disclosure Statement is intended to enable the Debtor's creditors to make an informed decision in voting to accept or reject the Plan. For the reasons set forth more fully herein, the Debtor hereby recommends and solicits acceptance of their proposed Plan by all persons entitled to vote on the Plan.

    B. <u>Source of Information</u>:

The source of the information contained within the Disclosure Statement is derived from the Debtor's books and records, historical data, and financial projections prepared by the Debtor and the Debtor's bookkeeping service.

**The information contained herein has not been subject to a certified audit. The records kept by the Debtor are dependent upon accounting performed by the Debtor. Because a current audit does not exist, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies or omissions, although great effort has been made to be accurate.**

**No representations concerning the Debtor is authorized by the Debtor other than those set forth in this statement. Any representations or inducements made to secure your acceptance, which are other than as contained in this statement, should not be relied upon by you in arriving at your decision. Such additional representations and inducements should be reported to counsel for the Debtor who, in turn, shall deliver such information to the Bankruptcy Court.**

    C. <u>Manner of Voting on the Plan</u>:

All creditors entitled to vote on the Plan may cast their vote for or against the Plan by COMPLETING, SIGNING, DATING, AND MAILING THE BALLOT accompanying this Disclosure Statement TO THE UNITED STATES BANKRUPTCY COURT AT THE SAM M. GIBBONS UNITED STATES COURTHOUSE, 801 N. FLORIDA AVENUE, STE. 555, TAMPA, FL 33602-3899, or the

Ballot can be submitted electronically through the Bankruptcy Court's website at: www.flmb.uscourts.gov and selecting "Electronic Filings" and "Chapter 11 Ballots", ON OR BEFORE THE TIME STATED THEREON

A copy of the ballot should be mailed to debtors' counsel Melody D. Genson, Attorney At Law, at: 2750 Ringling Boulevard, Suite 3, Sarasota, FL 34237.

D. Hearing on Confirmation of the Plan:

The United States Bankruptcy Court, Tampa, Florida, shall schedule the hearing on the confirmation of the Plan by separate order. Each party-in-interest will receive, either with this Disclosure Statement or under separate cover, the Bankruptcy Court's notice of hearing on confirmation of the Plan. Attendance is not mandatory, but creditors are invited to attend the Confirmation Hearing on the Plan and voice their opinion for or against objections, if any, filed with regard to confirmation of the Plan.

E. Acceptances Required to Confirm Plan:

As a creditor, your acceptance is important. In order for the Plan to be deemed accepted, the ballots must be tabulated. Of the ballots cast, more than one-half (½) in number of votes must be for the Plan. In addition, of the ballots cast, the favorable majority must also represent two-thirds (2/3rds) of the dollar amounts of all votes cast.

Further, unless there is unanimous acceptance of the Plan by a class that is deemed impaired under the Plan, the Bankruptcy Court must also determine that, under the Plan, members of such class will receive, as of the effective date of the Plan, property of a value that is not less than the amount that such class of creditors would receive or retain should the Debtor liquidate under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

## II. EVENTS LEADING TO FILING OF CHAPTER 11 PETITION

A. Background:

The Debtor in this Chapter 11 case is a corporation, which formed in 2015. The Debtor has one officer, David E. Stuckmeyer, who is the president of the Debtor. The Debtor's business is online sales of health and beauty products. The Debtor's financial problems started due to increased debt structure with interest rates that could not be maintained on the business' product profit margin. The Chapter 11 Bankruptcy for the Debtor was needed for the following reasons: collection efforts concerning the

Debtor's unsecured and secured creditors; and the Debtor's income is sufficient to cover its current basic operational costs and to fund a Plan of Reorganization; however, it has been insufficient to pay the debts at the interest rate being charged and under the collection methods of the creditors. The Debtor needed time to develop a plan for payment to creditors, and could not do so without the control of a Chapter 11 Bankruptcy.

This Chapter 11 Bankruptcy was filed on June 20, 2019. The Debtor expects to collect sufficient revenues in order to fund the Plan of Reorganization.

B. Commencement of Chapter 11 Case:

On June 20, 2019, the Debtor, Nuvidorra, Inc., filed a voluntary petition for relief under Chapter 11 of the U. S. Bankruptcy Code with the U. S. Bankruptcy Court for the Middle District of Florida, Tampa Division. This case was assigned Case Number, 8:19-bk-05832-CPM, and was assigned to the Honorable Catherine Peek McEwen.

Upon the commencement of the Chapter 11 case, the Debtor became "Debtor-in-Possession" and has continued in possession of its assets and to operate its business.

C. Pending Litigation:

Prior to the filing of the Chapter 11 Bankruptcy, the Debtor was not involved in any legal actions; however, the Debtor had aggressive collection acts by secured and unsecured creditors:

III. **SUMMARY OF PLAN OF REORGANIZATION**   (Consult Plan for full details.)

A. In General

The Plan provides for, among other things, the classification and treatment of claims against the Debtor, the funding mechanism for the Plan, provisions governing distribution under the Plan, provisions for the treatment of executory contracts and unexpired leases, provisions for the treatment of disputed claims, conditions to, and effects of, Plan confirmation, and provisions regarding the Bankruptcy Court's jurisdiction after the Effective Date.

B. Property to be Distributed

The collateral of secured creditor will be retained. Cash will be distributed under the Plan to holders of allowed secured, priority and general unsecured claims. The cash will be distributed in payments over the life of the Plan. The cash will emanate primarily from the revenues collected by the Debtor.

C. <u>Classifications and Treatment of Claims and Interests</u>

1. <u>Unclassified Claims:</u>

a. <u>Administrative Claims</u> Administrative claims are unimpaired under the Plan. The Debtor shall pay the allowed claim of the following administrative claims as set forth below:

1. Any administrative expense, allowed pursuant to Section 503 of the Bankruptcy Code, upon appropriate application and as granted by the Court not already paid prior to confirmation, the Debtor shall pay in full and in monetary funds (cash) within thirty (30) days of the effective date of the Plan or as otherwise agreed between the claimant and the Debtor.

2. The Debtor paid counsel of record, Melody D. Genson, a retainer fee of $12,500.00. Additional fees as approved by the Court shall be paid upon the entry of an order approving same or as otherwise agreed between counsel and the Debtor.

b. <u>Priority Tax Claims</u> Each holder of an Allowed Priority Tax Claim shall be paid by the Debtor by deferred equal monthly cash payments, in full, over the life of the plan, not to exceed six (6) years from the date of assessment. Interest shall be paid as allowed by law. There are no priority taxes to be paid in this case. The IRS amended its Proof of Claim to zero.

c. <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

d. <u>Classified Claims and Interests:</u> The following is a breakdown of the classes of claims and interests:

**CLASS I.**  <u>Secured – Amazon Capital Services, Inc. (Impaired)</u>:
No Proof of Claim Filed
Amount due: To Be Determined
Secured UCC Filed April 11, 2018
UCC No. 201804819679
Collateral: Inventory, Office Equipment and Machinery, Interest in Seller's Account with Amazon Deposit Accounts
UCC Expires: April 11, 2023

Amazon Capital Services, Inc. has a first lien on all of the Debtor's Inventory, Office Equipment and Machinery, Interest in Seller's Account with Amazon Deposit Accounts. The creditor shall retain its lien. The allowed amount of the secured claim shall be paid, at 3.00% interest rate over eighty-four (84) months beginning sixty (60) days from the effective date of the Plan. Payments shall be in eighty-four (84) equal monthly payments, or paid until the balance is paid in full, whereupon the lien shall be terminated. The amount of the secured claim shall be determined by the value of the Debtor's assets on the date of this Plan. The value of the assets is $101,075.56.

**CLASS II.** <u>General, Unsecured Creditors Who Elects to Do Business with the Debtor Post-Petition (Impaired)</u>: The Debtor shall issue to allowed unsecured creditors, who elects to continue to do business with the Debtor post-petition, promissory notes in the amount of one hundred percent (100%) of their allowed claims, as follows:

a) The Debtor shall provide to each unsecured creditor, with allowed claims, who elects to continue to do business with the Debtor post-petition, a promissory note that shall have a term of eighty-four (84) months, with payments commencing sixty (60) days from the effective date of the plan. The amount to be paid under the Note shall be the amount of one hundred (100%) the creditor's allowed claim.

b) The Notes shall bear no interest.

c) The Notes shall be paid in equal monthly installments over eighty-four (84) months, but may be paid in a lump sum, at the discretion of the Debtor.

d) Promissory Notes will be distributed within thirty (30) days of the effective date of the confirmation order to those creditors holding allowed claims at the time of confirmation.

e) The election to continue to do business with the Debtor shall be defined as a creditor agreeing to immediately sell product to the Debtor, provide services to the Debtor, or provide credit privileges to the Debtor, in the amount/limit as allowed the Debtor pre-petition. The post-petition terms for product being sold, post-petition, shall be a thirty (30) day credit from date of purchase until date payment on the product is due.

f) This election is intended to confer a benefit upon the Debtor and the payment of the greater amount of the claim is contingent upon this benefit being given to the Debtor for the term of the Plan.

g) If the Debtor fails to pay for post-petition services within the thirty (30) day period, the creditor must continue to do business with the Debtor, but may demand cash for post-petition product purchases at the time of purchase.

h) In order to make this election, the creditor must mark its ballot as being under Class II.

6

i) If no election is made by the creditor for Class II, or no ballot is filed by the creditor, the creditor shall be placed in Class III.

**CLASS III.** <u>General, Unsecured Creditors Who Elects Not to Do Business with the Debtor Post-Petition (Impaired)</u>: The Debtor shall issue to allowed unsecured creditors, who elects not to continue to do business with the Debtor post-petition, or makes no election for Class II, promissory notes in the amount of twenty percent (20%) of their allowed claims, as follows:

a) The Debtor shall provide to each unsecured creditor, with allowed claims, who elects not to continue to do business with the Debtor post-petition, a promissory note that shall have a term of sixty (60) months, with payments commencing sixty (60) days from the effective date of the plan. The amount to be paid under the Note shall be the amount of twenty (20%) the creditor's allowed claim.

b) The Notes shall bear no interest.

c) The Notes shall be paid in equal monthly installments over sixty (60) months, but may be paid in a lump sum, at the discretion of the Debtor.

d) Promissory Notes will be distributed within thirty (30) days of the effective date of the confirmation order to those creditors holding allowed claims at the time of confirmation. Creditors holding disputed claims at the time of confirmation, if said claim is allowed after confirmation, will be issued a Promissory Note within thirty (30) days of the claim being allowed. Said promissory notes will also have a term of sixty (60) months from the date of issuance.

**CLASS IV.** <u>Shareholders:</u> The Shareholders consist of the Equity Interest in the Debtor, which is held by David E. Stuckmeyer, who is the president of the Debtor. At this time, there is no value to the ownership of the Debtor because the debts of the Debtor are greater than the assets of the Debtor. As new value to the Debtor, in order to retain the ownership and be a shareholder, David E. Stuckmeyer shall waive any claims he may have against the Debtor, and shall continue to operate the company and be employed by the Debtor. It is the knowledge and expertise in this business that David E. Stuckmeyer has that is key to the Debtor's business.

David E. Stuckmeyer, as Shareholder, has contributed and will continue to contribute substantial new value to the Debtor as follows:

1. Assisting the Debtor in the financing of the Chapter 11 Plan through:

(a) Agreeing to minimal increases in compensation during the term of the Plan.

(b) Agreeing to defer any distribution of profits to member until the Plan is fully funded and completed.

(c) Agreeing to waive his rights to file a claim against the Debtor for deferred compensation or loans to the Debtor prior to the bankruptcy filing.

B.   CLAIM DETERMINATION

The Debtor shall review claims and file any objections to claim within thirty (30) days after confirmation. The Debtor shall file any additional motions or pleadings to determine creditor rights or treatment within Sixty (60) days of Confirmation.

C.   EXECUTORY CONTRACTS

All executory contracts pending at the time of the filing of the Bankruptcy are rejected unless specifically assumed by the Debtor.

The Plan lists any executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy or assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**(The Deadline for filing a Proof of Claim based on a Claim arising from the Rejection of a Lease or Contract is thirty (30) days of the effective date of the Order Confirming Plan**. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.)

D.   ANTICIPATED MEANS OF EXECUTION OF PLAN

In order to determine a means of funding the Plan, the Debtor has considered its income from the operation of its business, and the amount necessary to fund the Plan. The following is an analysis of these categories and the expected funding:

1.   Funding:

The Debtor will fund the Plan through the Debtor's business operations. The Debtor fully expects to be able to fund the Plan from operations.

8

2.  <u>Historical Data and Future Projections</u>:

The Debtor's pre-petition income and expenses for the years 2017 and 2018 are shown on Exhibit "A". The information comes from the Debtor's tax returns. Information from the Debtor's post-petition monthly operating reports is also listed. The Debtor's projected income and expenses are attached hereto as Exhibit "B" on the Debtor's pro forma. This pro forma demonstrates that the Debtor has the ability to meet the payments under the Plan. The Debtor has filed monthly operating reports with the Court. These can be reviewed also.

## IV.  LIQUIDATION ANALYSIS

Section 1129 (a) (7) of the Bankruptcy Code requires that the Bankruptcy Court find that each holder of a Claim or Interest in each impaired class recover under a Chapter 11 Plan, on account of that Claim or Interest, a value at least equal to the value of the distribution that such holder would receive if the Debtor's assets were liquidated under a Chapter 7 bankruptcy.

In order to estimate the sum, which would be available for distribution to general unsecured creditors of this Debtor, the Debtor has taken into account the negative effects of a Chapter 7 liquidation on hard assets and the fluctuating nature and difficulty of collecting accounts receivable. The Debtor believes that a Chapter 7 Trustee would have approximately zero to administer based upon the asset values, as of the date of this Plan, and considering secured and administrative claims to be paid.

The Debtor's estimate of distribution in a Chapter 7 bankruptcy is as follows:

Estimated total value of the unsecured hard assets per Schedules

*(Forklift, generator, dehumidifier, air conditioner, service cart,*
*electric vehicle charger, water cooler, 2 ladders*
*Computer, 2 computer monitors, lateral file cabinet, 3 chairs,*
*2 accent tables, cell phone, 4 desks, cupboard, 2 chaise lounges,*
*5 shelves, keyboard stand, 3 printers, UPS system, labeler,*
*shrink wrap machine)*

    *Total Value = $6,795.00*

Inventory

    *Total Value = $60,500.00*

Accounts Receivable

    *Total Value = $17,021.24*

Petty Cash

Checking Accounts

    *Total Value = $16,759.32*

| | |
|---|---|
| Total Assets: | $101,075.56 |
| Amazon Capital Services, Inc. has a perfected security interest in all of the Debtor's assets. The amount on the date of filing was: | $80,000.00 estimated |
| Total Available for the Plan: | $21,075.56 |
| Administrative Cost estimated at: | $10,000.00 |
| *Estimated Liquidation distribution to unsecured creditors* | *$11,075.56* |

Although liquidation under a Chapter 7 bankruptcy is always uncertain, the norm is that the reduction of asset value is substantial and the Debtor believes these estimated figures are correct.

Under this analysis, the Debtor's Plan pays substantially more to the creditors and meets the Best Interest of Creditors Test.

### V.  RISK FACTORS

As in most Chapter 11 reorganizations, there is a risk that the Debtor will not be able to make payments as proposed under the Plan; however, the Debtor believes that the Debtor's monthly revenues will generate sufficient funds to pay all creditors as provided herein.

### VI.  CRAMDOWN

In the event that any class of creditors is deemed impaired by this Plan of Reorganization and the requisite majorities of Class or Classes fail to approve this Plan of Reorganization, the Debtor intends to confirm its Plan of Reorganization over the objections of any such dissenting class, by use of the provisions of the Bankruptcy Code, Section 1129, and any other provisions relating to cramdown of dissenting classes.

## VII. MODIFICATION OF PLAN

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

## VIII. FINAL DECREE

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such final decree on its own motion.

## IX. CONTINGENCIES

There are no contingencies to the confirmation of the Plan other than the Court entering the Confirmation Order confirming the Plan.

## X. PROFESSIONALS REPRESENTING DEBTORS

During the course of the Chapter 11 case, the Debtor has hired Melody D. Genson Attorney at Law, to serve as its attorney. The Debtor paid a $12,500.00 retainer fee. Fees are charged at a rate of $400.00 per hour plus costs. Additional fees and costs will be requested from the court.

The Debtor hopes the creditors will vote for the Plan and keep administrative fees from escalating.

All additional attorney's fees and costs are subject to court approval upon appropriate application for same.

## XI. CONCLUSION

Based upon a comparison of the available alternatives, including forced liquidation of the Debtor's assets, and the disclosures contained herein, it is the judgment of the Debtor that the Plan offers all classes of creditors a greater return than would be otherwise possible.

Accordingly, the Debtor respectfully requests support for the Plan which the Debtor believes will pay the creditors significantly more than such creditors would obtain in a Chapter 7 liquidation case or if the case were dismissed.

The Debtor urges each creditor to support the Plan by returning their ballots accepting the Plan.

DATED: October 9th, 2019.

**Nuvidorra, Inc.**
By: David E. Stuckmeyer
Title: President

Melody D. Genson, Attorney at Law
2750 Ringling Boulevard, Suite 3
Sarasota, Florida 34237
Telephone: (941) 365-5870
Facsimile: (941) 365-5872
Florida Bar No. 342092
Attorney for Debtor

## Historical Data

Nuvidorra, Inc.

I.  **2017**

    Income:                          $1,435,438.00
    Cost of Goods Sold:       $1,271,562.00
    Gross Profit:                  $163,876.00

This is an 11.42% gross profit on sales.

Office expenses, wages, etc.:    $154,629.00

Net Profit:                      $9,247.00

II. **2018**

    Income:                          $1,302,106.00
    Cost of Goods Sold:       $1,154,277.00
    Gross Profit:                  $147,829.00

This is an 11.36% gross profit on sales.

Office expenses, wages, etc.:    $129,199.00

Net Profit:                      $18,630.00

III. **2019**

In 2019, the Debtor borrowed money in order to continue to grow the business, and the debt service and structure for repayment of the business loans exceeded the profits of the business. See attached 2019 January – June Profit and Loss Statement.

Exhibit "A"

# Nuvidorra, Inc.

PROFIT AND LOSS

January - June, 2019

|  | TOTAL |
|---|---:|
| **Income** |  |
| Refunds-Allowances | 150.29 |
| Sales | 483,957.34 |
| **Total Income** | **$484,107.63** |
| Cost of Goods Sold |  |
| Amazon Fees - COS | 143,101.99 |
| Ebay fees | 7.62 |
| Freight & delivery - COS | 220.47 |
| Inventory Shrinkage | 20,785.32 |
| Supplies & Materials - COGS | 327,165.99 |
| **Total Cost of Goods Sold** | **$491,281.39** |
| **GROSS PROFIT** | **$ -7,173.76** |
| Expenses |  |
| Bank Charges | 0.00 |
| Cellular Phones | 481.72 |
| Charitable Contributions | 25.00 |
| Dues & Subscriptions | 474.65 |
| Electric | 393.85 |
| Insurance - Liability | 1,457.53 |
| Interest Expense | 12,056.80 |
| Interest Paid Amazon Loans | 9,006.19 |
| Internet/Landline Phone | 1,023.04 |
| Legal & Professional Fees | 18,879.95 |
| Office Expenses | 116.50 |
| Payroll Expenses |  |
|   Taxes | 2,481.43 |
|   Wages | 32,602.72 |
| **Total Payroll Expenses** | **35,084.15** |
| Rent or Lease | 8,185.50 |
| Repair & Maintenance | 125.00 |
| Sales Tax | 205.82 |
| Taxes & Licenses | 150.00 |
| **Total Expenses** | **$87,665.70** |
| **NET OPERATING INCOME** | **$ -94,839.46** |
| Other Income |  |
| Interest Earned | 0.03 |
| **Total Other Income** | **$0.03** |
| Other Expenses |  |
| Miscellaneous | 49.79 |
| **Total Other Expenses** | **$49.79** |
| **NET OTHER INCOME** | **$ -49.76** |
| **NET INCOME** | **$ -94,889.22** |

Accrual Basis  Monday, July 8, 2019 08:16 AM GMT-7

1/2

PRO FORMA
Nuvidorra, Inc.

2019 Post-Petition Data from Debtor's Monthly Operating Reports:

I.     July
      Cash Received:       $39,496.83
      Cash Distributed:     $39,343.33 (Cost of goods sold and all expenses)
      Net to fund Plan:      $153.50

II.    August
      Cash Received:       $59,288.15
      Cash Distributed:     $54,899.36 (Cost of goods sold and all expenses)
      Net to fund Plan:      $4,388.79

III.   September
      Cash Received:       $42,009.69
      Cash Distributed:     $38,283.07 (Cost of goods sold and all expenses)
      Net to fund Plan:      $3,726.62

The Debtor has historically had approximately 9.00% to 11.00% gross profit from sales, in order to pay all expenses.

Anticipated Plan payment on the eighty-four (84) month Plan:
      Secured Creditor Amazon Capital Services, Inc.: $1,242.72
      Class II Unsecured, Creditors:     $1,620.52
                                      $2,863.34

      Secured Creditor Amazon Capital Services, Inc.: $1,242.72
      Class III Unsecured, Creditors (60 Month Plan): $   453.41
                                      $1,696.23

The Debtor's post-petition Monthly Operating Reports show that the Debtor can fund the Chapter 11 Plan with the net profits being made, at this present time.

Exhibit "B"